M-A-C Plan, Inc., of Rhode Island *vs.*
Louis Annacone, Inc.

Louis Annacone, Inc., *vs.* M-A-C Plan, Inc.,
of Rhode Island.

APRIL 23, 1940.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. These are two actions for trover and conversion, the former being for the conversion of a LaSalle automobile and the latter for the conversion of a Chevrolet automobile.

By agreement they were heard together before a justice of the superior court, sitting without a jury, and in each of them his decision on the merits was in favor of Louis Annacone, Inc., the damages in the latter case being fixed at $500, a sum agreed upon between the parties as the value of the Chevrolet automobile.

The cases are now before us on bills of exceptions filed by M-A-C Plan, Inc., of Rhode Island, the only exception in each case being to the final decision, on the grounds that it was against the law and that it was against the evidence and the weight thereof. Both of the parties are corporations and we shall hereinafter refer to them as M-A-C Plan and Annacone respectively.

The facts in the cases are mainly the same and are not substantially in dispute. On June 1, 1938, the Pawtucket Motor Mart, Inc., hereinafter referred to as Motor Mart, was a corporation engaged as a dealer in automobiles in the city of Pawtucket in this state, under the management and control of one Fierstein. On that day, acting for Motor Mart, he went to the place of business of Annacone in Boston and there agreed to buy from it the two cars in dispute in this case and took them to the places of business of Motor Mart in Pawtucket.

The sale prices of the two cars, as entered on the books of Annacone, were $1125 for the LaSalle and $450 for the Chevrolet. Because of another transaction on the same day between the two corporations, the sum of $50 was added to these two sums to make a total sum of $1625, for which a check of Motor Mart, dated June 1, 1938, was then drawn on a Providence bank and delivered by Fierstein to Annacone. A bill of sale of the two cars from Annacone to Motor Mart was then drawn and delivered, which was duly signed in behalf of the two corporations and in which the price of the two cars was stated as $1625.

This bill of sale contained the following provision, subject to which the sale and purchase were made: "If Payment by check, check guaranteed. Title will not pass to Purchaser until payment in full has been made. If final payment is made by check title will not pass until check is paid." Directly opposite these words, the following words were written: "Paid by check."

On the next day Fierstein, acting for Motor Mart, requested from M-A-C Plan a loan, to be secured by a mortgage on these two cars and another one on the premises of the former corporation; and this request was granted, in accordance with a practice that had prevailed between the two corporations for some time. The loan that was then made was for $1550, for which a note from Motor Mart to M-A-C Plan was given; and the payment of it was secured by a mortgage on the three cars. This mortgage was never filed for record.

As a part of this transaction the aforesaid bill of sale was shown to the representative of M-A-C Plan, who read it and saw the above provision in it as to title not passing until the check mentioned therein was paid. He never made any inquiry as to whether that check was paid or whether either of the cars covered by the bill of sale had been paid for. Of the money loaned on the security of the above mortgage $1073 was applied by Motor Mart to the payment of previously incurred and unpaid indebtedness of that corporation to M-A-C Plan on previous similar loans, which had been secured by mortgages on automobiles subsequently sold by Motor Mart.

The above-mentioned check for $1625, dated June 1, 1938 and payable to Annacone, was promptly deposited by the payee in the Somerville National Bank, in which its account was carried. About June 6, 1938, Annacone was notified that the check had been dishonored, for want of funds to the credit of the drawer, by the Providence bank on which

it was drawn; and on June 8, the check was received back by Annacone.

Motor Mart was promptly notified by Annacone of what had happened to its check. It then drew another similar check for the same amount and also dated June 1, 1938 and sent it to Annacone. It was received on Saturday, June 11, and was deposited in the Somerville bank on June 13. This check also was dishonored by the Providence bank, for want of funds, on June 15; and it was charged back to Annacone by the Somerville bank on June 18. A notice of the non-payment was given by telegraph on June 15 by the Providence bank to the Somerville bank, which must have promptly notified Annacone. One witness testified that notice was given on June 16. The check came back on the 18th.

The general manager of Annacone tried soon afterwards to get Fierstein on the telephone, but did not succeed. A little later, apparently about the 18th or 19th, he went to Motor Mart's place of business in Pawtucket. There is some doubt from the testimony whether or not he talked with Fierstein. But the testimony is uncontradicted that the LaSalle car was not there at that time; and that the Chevrolet car was there and the general manager of Annacone did nothing about reclaiming it.

On June 21 he went again to Motor Mart's place of business and found both cars there. By arrangement with Fierstein, he took back to Boston with him the LaSalle and credited for it, in behalf of Annacone, $1025 on Motor Mart's account, thus leaving an unpaid balance of $600 due Annacone on that account. This taking back of the LaSalle is the alleged conversion relied upon by M-A-C Plan in its action now before us.

Annacone's general manager could then have taken possession of the Chevrolet also; but instead of doing so he accepted from Motor Mart two checks, dated June 21, 1938

for $300 each, to cover the unpaid balance of $600, and left the Chevrolet there. He was told at the time by Fierstein that there was not enough money in the Motor Mart's bank account to pay both checks. No further agreement was made about that car.

One of these two checks was deposited by Annacone in the Somerville bank; and it also was dishonored for want of funds and was returned to Annacone. The other check for $300 was never deposited at all. A little after June 21 M-A-C Plan seized the Chevrolet car in accordance with the above-mentioned chattel mortgage by Motor Mart to M-A-C Plan, the seizure being the alleged conversion relied on by Annacone in its action now before us.

On all the facts above stated we are of the opinion that the decision of the trial justice for the defendant in the case brought by M-A-C Plan against Annacone was not against the law or against the evidence or the weight thereof.

The bill of sale of the two cars contained a clear and definite reservation of title to Annacone until the payment of the check; and M-A-C Plan loaned money to the purchaser and received a mortgage as security therefor, with full knowledge of that reservation. The mortgage, therefore, in our judgment, was subject to such reservation and continued to be subject to it until the transaction between Annacone and Motor Mart on June 21, 1938, notwithstanding the receipt and acceptance by Annacone of a duplicate check after the dishonor of the first check.

Up to the time when Annacone received back the LaSalle car from Motor Mart nothing had occurred which clearly and vitally altered the relations between them; nor was there such delay by Annacone as clearly to have that effect, or to preclude the former from denying the latter's authority to mortgage that car to M-A-C Plan on June 2.

We therefore are of the opinion that, as to that car, the finding by the trial justice that Annacone's right to possession, at the time when it took that car back on June 21, was superior to that of M-A-C Plan should not be set aside; and that his decision for the defendant in the case brought by M-A-C Plan was not against the evidence or the weight thereof or against the law.

But as to the Chevrolet car the conduct of Annacone on June 21 was very different. Instead of taking back the car, as it had a right to do and could have done, it left it in the possession of Motor Mart under a new and different contract.

After crediting on the account between these two corporations the sum of only $1030 for the LaSalle car, instead of $1125, as charged on the books of Annacone, it took from Motor Mart two new checks for $300 each, dated June 21, 1938, making a total of $600, although the amount that had been charged for the Chevrolet in the original sale of the two cars to Motor Mart was only $450. When Annacone took these two new checks, it had notice that the drawer did not have in its bank the funds to meet them; and the fact that Annacone only deposited one of these checks in its account and never deposited the other one points strongly to the conclusion that when they were delivered there was an understanding between the parties that at least one of the checks would not be deposited promptly. There was no evidence, written or even oral, of a reservation by Annacone on June 21 of title to the Chevrolet.

It is our opinion that the only reasonable inference from all the pertinent evidence is that the conduct of these two corporations on June 21, as to this car, changed the original transaction between them, in which title was to remain in Annacone until the check for $1625 should be paid, into a transaction on credit, title being vested in Motor Mart as

against Annacone and the latter being precluded from contesting the validity of the former's mortgage to M-A-C Plan.

We therefore are convinced that M-A-C Plan had a right, as mortgagee, to take possession of the Chevrolet car as it did; and that the decision of the trial justice for the plaintiff in the action brought by Annacone against M-A-C Plan for the alleged conversion of that car was erroneous. As the material facts of this case are not in dispute, we now see no good reason why a judgment for the defendant should not be ordered.

In the case of *M-A-C Plan, Inc., of Rhode Island* v. *Louis Annacone, Inc.,* the plaintiff's exception is overruled and the case is remitted to the superior court for entry of judgment for the defendant on the decision.

In the case of *Louis Annacone, Inc.,* v. *M-A-C Plan, Inc., of Rhode Island,* the defendant's exception is sustained. On May 6, 1940, the plaintiff may appear before us and show cause, if any it has, why a judgment for the defendant should not be ordered to be entered in the superior court.

*Thomas P. Corcoran, Charles E. Mangan* for M-A-C Plan, Inc., of Rhode Island.

*Joseph H. Coen, A. Louis Rosenstein* for Louis Annacone, Inc.